UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LUVATA BUFFALO, INC., and AIG EUROPE,　　　**REPORT AND**
S.A. as assignee and/or subrogee of　　　　　　**RECOMMENDATION**
Luvata Buffalo, Inc., Luvata Oy f/k/a Luvata
Holding Oy and Luvata International Oy,　　　08-CV-0701(A)(M)

　　　　　　　　　　　Plaintiffs,

v.

MOL MITSUI O.S.K. LINES, LTD.;
MONTSHIP, INC., and INCHCAPE
SHIPPING SERVICES, as agents of
MOL MITSUI O.S.K. LINES, LTD.,
MONTSHIP, INC., and INCHCAPE
SHIPPING SERVICES,

　　　　　　　　　　　Defendants.
_____

　　　　　This case has been referred to me by Hon. Richard J. Arcara to decide all non-dispositive motions, hear and report on all dispositive motions, and otherwise supervise pretrial proceedings [16].[1] Before me is defendants' motion to dismiss the Amended Complaint [17]. For the following reasons, I recommend that defendants' motion to dismiss be granted in part and denied in part.

　　　　　　　　　　　　　　　**BACKGROUND**

　　　　　On or about March 20, 2007, Luvata Buffalo, Inc. ("Luvata") contracted with MIH Scrap Metals International LLC ("MIH") to purchase 1,500 metric tons of copper cathodes. Amended Complaint [3], ¶11. In turn, MIH contracted with defendant MOL Mitsui O.S.K. Lines,

---

　　[1]　　　Bracketed references are to CM-ECF docket entries.

LTD ("MOL") to ship the first 500 metric tons of copper cathodes from Tanzania to Canada. Id., ¶12. Defendant Montship, Inc. ("Montship") acted as MOL's shipping agent and defendant Inchcape Shipping Services ("ISS") acted as MOL's and/or Montship's agent in Tanzania. Id., ¶13.

The shipment sailed from Tanzania on or about July 24, 2007. Id., ¶17. MOL issued a Bill of Lading on July 25, 2007, listing Luvata as the consignee and reflecting that the proper cargo had been shipped. Id., ¶18., Ex. B. In reliance on the Bill of Lading, Luvata paid MIH $3,777,036.06 for the shipment. Id., ¶19. The Bill of Lading was signed by a representative of Luvata on September 19, 2007. Crowley Affidavit [18], Ex. 2. However, when the shipment was delivered to Luvata on September 24, 2007, it did not contain any copper cathodes. Amended Complaint [3], ¶20.

Following the loss, AIG Europe, S.A. ("AIG") reimbursed Luvata $3,938,869.43 under its extended crime insurance policy. Id., ¶¶2 and 29. Consequently, Luvata assigned to AIG the right to seek recovery from any responsible party for the amount which it had paid to Luvata. Id., ¶29.

Before an answer was filed, AIG filed an Amended Complaint,[2] which alleges that defendants were responsible for the fraudulent Bill of Lading, and asserts claims for breach

---

[2] This action was initially commenced by a Complaint filed by Luvata [1]. AIG Europe, S.A. ("AIG") was then granted permission to file the Amended Complaint [3, 7]. Although defendants have treated the Amended Complaint as being brought on behalf of both Luvata and AIG (Answer to Amended Complaint [12]), the Amended Complaint is brought only on behalf of AIG. Thus, my Report and Recommendation is addressed only to AIG's claims asserted in the Amended Complaint, and does not address any claims which Luvata has or may assert.

of the New York Uniform Commercial Code, breach of contract, fraud, fraudulent misrepresentations, negligence and negligent misrepresentation [3]. Defendants answered the Amended Complaint on March 27, 2009, asserting numerous affirmative defenses, including lack of personal jurisdiction and improper venue [12], ¶¶75, 78. Defendants now move pursuant to Fed. R. Civ. P. ("Rules") 12(b)(2), 12(b)(3) and 12(c) to dismiss the Amended Complaint based upon the forum selection clause of the Bill of Lading, or in the alternative, dismissing Montship and ISS due to lack of personal jurisdiction [17].

## ANALYSIS

A.  **Defendants' Motion to Dismiss the Amended Complaint.**

1.  **Timeliness of Defendants' Motion Pursuant to Rule 12(b).**

AIG argues that because defendants waited nine months after answering the Amended Complaint before moving for dismissal pursuant to Rule 12(b), their motion is untimely. AIG's Memorandum of Law [24], p.7.[3] I agree that the motion is untimely to the extent that it is based on Rule 12(b), which requires that the motion be made "before pleading if a responsive pleading is allowed".

Therefore, I will instead address defendants' motion under Rule 12(c). *See* Federal Insurance Co. v. M/V "Ville D'Aquarius", 2009 WL 3398266, *3 (S.D.N.Y. 2009) (involving a motion to dismiss based upon a forum selection clause): "Because these motions were brought after the defendants answered plaintiff's complaint, the motions cannot be made

---

[3] Luvata has not filed any opposition to the motion.

pursuant to Rules 12(b)(3) or 12(b)(6) . . . . Therefore, I will treat the motions as Rule 12(c) motions for judgment on the pleadings."

### 2. Is the Forum Selection Clause Valid and Enforceable?

A forum selection clause "is enforced unless it imposes a venue so gravely difficult and inconvenient that the plaintiff will for all practical purposes be deprived of his day in court". Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., 130 S.Ct. 2433, 2448 (2010). *See* "Such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). "The party claiming unreasonableness of a forum selection clause bears a heavy burden; in order to escape the contractual clause, he must show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG, 121 F.3d 24, 32 (2d Cir. 1997); Macsteel International USA Corp. v. M/V Larch Arrow, her engines, boiler, etc., 354 Fed.Appx. 537, 539. 2009 WL 4255517 (2d Cir. 2009) (Summary Order).

A four-step analysis is used to determine whether to dismiss a claim based on a forum selection clause: "(1) whether the clause reasonably communicated to the party resisting enforcement; (2) is the clause mandatory or permissive, that is, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit subject to the forum selection clause". Macsteel, 354 Fed. Appx. at 539; Phillips v. Audio Active Ltd., 494 F. 3d 378, 383-84 (2d Cir. 2007). "If the first

-4-

three steps in the inquiry are satisfied, then the court turns to the final step, which is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Macsteel, id.

        a.        **Was the Forum Selection Clause Reasonably Communicated to Luvata?**

Although AIG initially argued that the forum selection clause was illegible and therefore could not support the motion to dismiss (AIG's Memorandum of Law [24], p. 11), at oral argument its counsel acknowledged that the terms of the Bill of Lading, including the forum selection clause, were reasonably communicated to Luvata.[4]

        b.        **Is the Forum Selection Clause Mandatory?**

"For a forum selection clause to be deemed mandatory, jurisdiction and venue must be specified with mandatory or exclusive language". Macsteel, 354 Fed.Appx. at 539. This "inquiry is one of contract interpretation". Phillips, 494 F. 3d at 386.

The forum selection clause at issue states:

"The contract evidenced by or contained in this Bill of Lading shall be
governed by Japanese law except as may be otherwise provided for herein.
Unless otherwise agreed by the Carrier, any action against the Carrier
thereunder *must* be brought *exclusively* before the Tokyo District Court in
Japan. Any action by the Carrier to enforce any provision of this Bill
of Lading may be brought before any court of competent jurisdiction

---

       [4]       Therefore, I find no basis to address AIG's argument that defendants' motion be converted to one for summary judgment, since that argument is premised on the illegibility of the Bill of Lading. AIG's Memorandum of Law [24], p. 8.

at the option of the Carrier." Crowley Affidavit [18], Ex. 3, ¶25
(emphasis added).

This language "means exactly what it says. It does not mean '*may* be brought before the Tokyo District Court in Japan' as well as anywhere else plaintiff might care to sue". TMC Co., Ltd. v. M/V Mosel Bridge, 2002 WL 1880722, *1 (S.D.N.Y. 2002).

Therefore, I conclude that the forum selection clause is mandatory. *See, e.g.,* M/S Bremen, 407 U.S. at 20 (finding forum selection clause, which stated "any dispute arising must be treated before the London Court of Justice", to be mandatory); Silva v. Encyclopedia Britannica Inc., 239 F. 3d 385, 389 (1st Cir. 2001) (finding forum clause, which stated "actions involving this agreement must be brought in the State of Illinois", to be mandatory); Marsh USA, Inc. v. Karasaki, 2008 WL 1805662, *9 (D.Hawaii 2008) (finding forum selection clause, which stated "any action or proceeding with respect to this Agreement and the Employee's employment shall be brought exclusively", to be mandatory).

        **c.**        **Are the Claims at Issue Subject to the Forum Selection Clause?**

"Whether or not a forum selection clause applies depends on what the specific clause at issue says". Phillips, 494 F.3d at 389 (emphasis in original). "[B]ills of lading are contracts of adhesion and, as such, are strictly construed against the carrier." Allied Chemical International Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F. 2d 476, 482 (2d Cir.1985), cert. denied, 475 U.S. 1099 (1986). Therefore, any ambiguities in its language "must be resolved against the carrier". Mitsui & Co., Ltd. v. American Export Lines, Inc., 636 F. 2d 807, 823 (2d Cir. 1981).

With these principles in mind, I will consider the six causes of action alleged in AIG's Amended Complaint [3]: first, for breach of duty under the New York Uniform Commercial Code (Id. ¶¶30-37); second, for breach of contract (Id. ¶¶38-43); third, for fraud (Id., ¶¶44-50); fourth, for fraudulent misrepresentations (Id., ¶¶51-58); fifth, for negligence (Id., ¶¶59-67); and sixth, for negligent misrepresentations (Id., ¶¶68-74).

      **i.     First Cause of Action: Violation of the New York Uniform Commercial Code**

The Amended Complaint alleges that defendants breached their duty under the New York Uniform Commercial Code ("UCC") to properly describe and deliver goods. Amended Complaint [3], ¶¶30-37. Although AIG does not specify the UCC section alleged to have been breached, the only even potentially applicable provision is §7-309(1), which states that "[a] carrier who issues a bill of lading whether negotiable or non-negotiable must exercise the degree of care in relation to the goods which a reasonably careful man would exercise under like circumstances".

Without deciding the merits of that claim,[5] I conclude that it is not subject to the forum selection clause. The clause applies only to actions "thereunder", meaning under "the contract evidenced by or contained in this Bill of Lading". The duties which are the subject of

---

[5] I note, however, that its merits are doubtful. See Starmakers Publishing Corp. v. Acme Fast Freight, Inc., 615 F. Supp. 787, 791 (S.D.N.Y. 1985) ("it is safe to assume that the New York [UCC] provisions govern only intrastate shipments").

AIG's first cause of action are not imposed by the contract, but rather by "the New York Uniform Commercial Code, a source of law and duties separate from the Bill of Lading itself". AIG's Memorandum of Law [24], p. 14.

### ii. Second Cause of Action: Breach of Contract

AIG's second cause of action seeks to recover for "breach of the Bill of Lading". Amended Complaint [3], ¶¶40, 42. Since AIG has conceded that the contract referenced in the forum selection clause is the Bill of Lading, its second cause of action, which specifically alleges that defendants breached the Bill of Lading, is encompassed by the forum selection clause.

### iii. Third Through Sixth Causes of Action: Fraud and Negligence

The question of whether AIG's tort claims (fraud, fraudulent misrepresentations, negligence, and negligent misrepresentations) are subject to the forum selection clause presents a closer question. While some courts hold that "[t]he scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it", *e.g.*, Cfirstclass Corp. v. Silverjet PLC, 560 F. Supp. 2d 324, 329 (S.D.N.Y.2008), that depends "on what the specific clause at issue says". Phillips, 494 F.3d at 389.

The forum selection clause at issue in this case refers only to "any action against the Carrier thereunder", that is, under the contract evidenced by the Bill of Lading. However, AIG'c tort claims are not based solely on the Bill of Lading. Instead, it alleges "that Defendants injured Luvata through the creation or acceptance of fraudulent or false shipping documents and/or labels, that were different and separate from the Bill of Lading". AIG's Memorandum of

Law [24], pp. 13-14. *See*, *e.g.*, Amended Complaint [3], ¶45 ("defendants knowingly created false or fraudulent shipping documents . . . with the intent to deceive Luvata "); Eusanio Affidavit [23], Exs. 4-6.

Had MOL wished to require all claims, not merely contract claims, to be adjudicated in Tokyo, it easily could have used language to that effect. *See*, *e.g.*, <u>Hyundai Corp. U.S.A. Inc. v. M/V an Long JIANG</u>, 1998 WL 13835, *1 (S.D.N.Y. 1998) ("Any and all action concerning custody or carriage under this Bill of Lading whether based on breach of contract, tort or otherwise shall be brought before the Seoul Civil District Court in Korea"); <u>Intertrade Finance Corp., Ltd. v. Kennedy Funding, Inc.</u>, 2010 WL 2607159, *1 (S.D.N.Y. 2010) ("Borrower and Guarantor(s) consent to the jurisdiction of any state or federal court sitting in the State of New Jersey for adjudication of any dispute between the Borrower and Guarantor(s) . . . under any theory of law in connection with, out of, or otherwise relating to this Commitment and any related transactions").

At best, the forum selection clause is ambiguous as to whether AIG's tort claims are included within its scope. Since that ambiguity must be resolved against the carrier (<u>Mitsui</u>, 636 F. 2d at 823), I conclude that the forum selection clause does not apply to AIG's third through sixth causes of action.

### d. Would Application of the Forum Selection Clause to the Breach of Contract Claim be Unreasonable?

"Forum selection . . . clauses are 'unreasonable' (1) if their incorporation into the agreement was the result of fraud or overreaching . . . ; (2) if the complaining party 'will for all

practical purposes be deprived of his day in court,' due to the grave inconvenience or unfairness of the selected forum . . . ; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy . . . ; or (4) if the clauses contravene a strong public policy of the forum state". Roby v. Corporation of Lloyd's, 996 F. 2d 1353, 1363 (2d Cir. 1993), cert. denied, 510 U.S. 945 (1993).

### i. Was the Clause Obtained by Fraud and Overreaching?

It is well settled that a "forum-selection clause in a contract is not enforceable if the inclusion of *that clause* in the contract was the product of fraud". Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n. 14 (1974) (emphasis added). AIG argues that the "Bill of Lading was apparently a fraudulent instrument into which Luvata was induced to rely upon through negligent and/or fraudulent misrepresentations". AIG's Memorandum of Law [24], p. 14. However, unlike the situation in Armco, Inc. v. North Atlantic Insurance Co. Limited, 68 F. Supp. 2d 330, 340 (S.D.N.Y.1999), AIG does not claim that Luvata was fraudulently induced to specifically agree to the forum selection clause.

### ii. Would Enforcement of the Clause Create a Grave Inconvenience

AIG argues that "most of the physical exhibits and many of the witnesses in this matter are located in Buffalo . . . or at least in the United States". AIG's Memorandum of Law [24], p. 15. Generally, "increased cost and inconvenience are insufficient reasons to invalidate foreign forum-selection or arbitration clauses". Mitsui & Co. (USA), Inc. v. Mira M/V, 111 F.

3d 33, 37 (5th Cir. 1997). *See also* Abbott Laboratories v. Takeda Pharmaceutical Co. Limited, 476 F. 3d 421, 426 (7th Cir. 2007) ("what Abbott means by 'unreasonable' is simply that Japan is a less convenient forum than Illinois for the litigation of this dispute. Maybe so. And maybe therefore if the choice of forum were governed by the doctrine of forum non conveniens Abbott would be permitted to remain in Illinois, since balance of convenience is the standard for application of the doctrine. But a forum selection clause is a substitute for the doctrine, not another name for it").

Beyond mere inconvenience, there is no allegation that these logistical impediments would deprive AIG of its day in court as required to invalidate a forum selection clause. Thus, AIG has not met the "heavy burden of proof" required to set aside the forum selection clause on inconvenience grounds. *See* Effron v. Sun Line Cruises, Inc., 67 F. 3d 7, 11 (2d Cir. 1995).

        **iii.**    **Would Enforcement of the Clause Deprive AIG of a Legal Remedy**?

AIG argues that "forcing this action to move to Tokyo, Japan will simply force a court in Tokyo, Japan, instead of a court in New York, to deal with a dispute mostly centered on New York law". AIG's Memorandum of Law [24], p. 15. However, the forum selection clause states that Japanese law will govern the dispute, and AIG has not presented any basis for me to conclude otherwise at this time.

In any event, there is nothing to suggest that Japan's courts will be unable to apply New York law (if applicable) to its breach of contract claim. "This Court is entitled to, and does,

-11-

assume that the courts of Japan will apply the applicable law in a balanced, appropriate manner." TMC Co., Ltd. v. M/V Mosel Bridge, 2002 WL 1880722, *1 (S.D.N.Y. 2002).

### iv. Would Enforcement of the Clause Contravene New York's Public Policy?

AIG argues that "this case is not simply a dispute to be decided by Japanese law, but touches on the interests of New York state to govern the duties owed by others to New York businesses". AIG's Memorandum of Law [24], p. 15. However, "the contractual choice of forum is not to be set aside merely because the foreign law may be different or less favorable than that in the United States. . . . [Plaintiff] has provided no evidence of any fundamental unfairness in the law that might be applied in Japan. Further, there is every indication that [plaintiff] will be provided with a similar remedy in Japan". Talatala v. Nippon Yusen Kaisha Corp., 974 F. Supp. 1321, 1327 (D.Hawaii 1997). Therefore, I find that enforcement of the forum selection clause would not be unreasonable.

### 3. Personal Jurisdiction Over Defendants Montship and ISS

In the alternative, defendants argue that AIG's claims against Montship and ISS should be dismissed for lack of personal jurisdiction because "the Amended Complaint is devoid of any allegations that Defendants Montship or ISS(T) transacted business in New York, committed a tortious act in New York, or committed any tortious act outside of New York which had any legally cognizable 'injury' within New York to satisfy the requirements of NY CPLR §302(a)". Defendants' Memorandum of Law [19], p. 22. According to AIG, ISS and Montship

are subject to personal jurisdiction under CPLR 302(a)(1) and (a)(3)(ii). AIG's Memorandum of Law [24], pp. 17, 21.

"In resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process". Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F. 3d 560, 567 (2d Cir. 1996), cert. denied, 519 U.S. 1006 (1996). Under CPLR 302, personal jurisdiction over a non-domiciliary is established when that entity: "1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce".

Judge Arcara recently addressed this same issue in the companion case of AIG Europe, S.A. v. MIH Scrap Metals International, LLC, 2010 WL 2720593 (W.D.N.Y. 2010), which was brought against the other alleged tortfeasors responsible for the loss, including MIH Scrap Metals International, LLC ("MIH"), the supplier of the copper cathodes. Judge Arcara denied MIH's motion to dismiss the complaint for lack of personal jurisdiction under CPLR 302(a)(3), holding that "accepting the allegations in the complaint as true, MIH's failure to load the shipping containers with the contractually agreed - to product injured Luvata and its

operations in Buffalo, within the meaning of CPLR 302(a)(3). Plaintiffs thus have made a prima facie showing of personal jurisdiction under New York law". 2010 WL 2720593 at *4.

This case having been referred to me by Judge Arcara, I look to his decisions for guidance. In this case and <u>AIG Europe, S.A.</u>, AIG claims that the loss of the copper cathodes injured Luvata's business in Buffalo. Amended Complaint [3], ¶7 ("Luvata Buffalo's business . . . was affected by the loss").[6] Because this allegation is common to both cases and appears to have compelled Judge Arcara's holding in <u>AIG Europe, S.A.</u> that plaintiffs made a prima facie showing of personal jurisdiction under CPLR 302(a)(3), I am reluctant to do anything other than follow his ruling in this case.[7] Therefore, I recommend that defendants' motion to dismiss for lack of personal jurisdiction be denied "subject to an ultimate resolution of the issue at trial". <u>AIG Europe, S.A.</u>, 2010 WL 2720593 at *5.[8]

---

[6] Similarly, in <u>AIG Europe, S.A.</u>, AIG alleges that "the loss was . . . incurred by Luvata in Buffalo, New York; Luvata's business affected by the subject loss is located in this District". AIG's Complaint [1], ¶22.

[7] In <u>AIG Europe, S.A.</u>, Judge Arcara also found that MIH's contacts with New York satisfied due process. 2010 WL 2720593 at *5. However, here, defendants initially argue only in conclusory terms that "there is no reasonable factual scenario which Plaintiffs could plead that would satisfy the constitutional requirements for New York 'long arm' jurisdiction" (defendants' memorandum of law [19], p. 20), and fail to rebut AIG's due process arguments in their reply. AIG's Memorandum of Law [24], p. 19. I am "not obliged to accept [defendants'] conclusory legal argument in this regard". <u>Glatzer v. Barone</u>, 614 F. Supp. 2d 450, 472 (S.D.N.Y. 2009). Defendants also fail to argue that ISS and Montship did not expect or should not have reasonably expected their conduct to have consequences in the state and derive substantial revenue from interstate or international commerce or to rebut AIG's arguments (AIG's Memorandum of Law [24], p. 19) in this regard. *See* CPLR 302(a)(3)(ii).

[8] In light of this recommendation, I find no reason to address whether there exists personal jurisdiction under CPLR 302(a)(1).

**CONCLUSION**

For these reasons, I recommend that defendants' motion to dismiss the Amended Complaint [17] be granted to the extent it seeks dismissal of the breach of contract claim, but that the motion otherwise be denied, without prejudice to AIG's right to commence suit on its breach of contract claim before the Tokyo District Court in Japan.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by August 16, 2010 (applying the time frames set forth in Fed. R. Civ. P. 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with

the provisions of Rule 72.3(a)(3), may result in the district judge's refusal to consider the objection.


**SO ORDERED.**

Dated: July 28, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
